PATRICIA ANN LEWIS, Respondent-Appellee, *v.* DANIEL HARBERT LEWIS, Petitioner-Appellant

No. 10820

(FC-D No. 129510)

and

THOMAS VYN REESE, SR.,. Petitioner-Appellee, *v.* BEVERLY JEAN REESE, Respondent-Appellant

NO. 10740

(FC-D No. 9879 (2) )

JANUARY 22, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

The following opinion covers two unconsolidated cases with related legal issues.

*Lewis v. Lewis, No. 10820*

Certiorari was granted to Daniel Harbert Lewis, petitioner-appellant ("husband"), for a review of the Intermediate Court of Appeals ("ICA") decision affirming the family court's divorce decree awarding spousal support and division of property.

On May 22, 1970, the day before husband and Patricia Ann Lewis, respondent-appellee ("wife"), were married in New York, they executed a premarital agreement which provided that in the event of divorce after they have had a child, wife would accept $1000 per month until death or remarriage in full satisfaction of husband's spousal support obligation. The agreement made no provision for division of property upon divorce.

In the divorce decree dated July 3, 1985, the family court refused to enforce the premarital agreement and instead awarded wife $2500 per month for 72 months or until death or remarriage. The decree awarded husband the residence subject to his paying to wife the sum of $150,000. Husband appealed.

The ICA affirmed and held: 1) that Hawaii law governed the issue of the enforceability of the premarital agreement; 2) that the family court did not err or abuse its discretion in refusing to enforce the premarital agreement and by awarding $2500 per month in spousal support; and 3) that the family court did not abuse its discretion in awarding wife the sum of $150,000. We agree on points 1) and 3), but vacate the ICA's holding on point 2).

I.

Husband contends that the enforceability of the premarital agreement should be governed by New York law, the place where the parties were married and the agreement was executed. We disagree.

We have moved away from the traditional and rigid conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter. *See Peters v. Peters,* 63 Haw. 653, 634 P.2d 586 (1981). Primary emphasis is placed on deciding which state would have the strongest interest in seeing its laws applied to the particular case. *Cf. id.*

The most valuable real property owned at the time of divorce is located in Hawaii. Wife has been continuously living in Hawaii since no later than July 1982, and husband has been a resident of Hawaii since February 1983. New York's interest, if any, regarding the spousal support wife receives from husband is secondary to Hawaii's interest. Hawaii has the stronger and primary interest in

seeing its laws applied to this case because it is most directly affected by the respective financial positions of husband and wife. *Cf.* *Peters,* 63 Haw. at 664, 634 P.2d at 593.

Finally, the family court's task of deciding the enforceability of premarital agreements would become more difficult with less certainty if the law of the place where the parties were married or the premarital agreement was executed is applied. *Cf. Peters,* 63 Haw. at 666, 634 P.2d at 594. We hold that Hawaii law governs this case.

II.

In June, 1987, the Governor signed into law the Uniform Premarital Agreement Act ("Hawaii Act"), which is virtually identical to the Uniform Premarital Agreement Act approved by the National Conference of Commissioners on Uniform State Laws in 1983.

Other than Section 10, the Hawaii Act has no application to this case. Section 10 states:

> All written agreements entered into prior to the enactment of this Act between prospective spouses for the purpose of affecting any of the provisions of this Act shall be valid and enforceable if otherwise valid as contracts.

The premarital agreement between husband and wife was entered into in 1970, and therefore, the issue is whether the agreement was valid and enforceable under principles of contract law.

The ICA held that under Hawaii Revised Statutes (HRS) § 580-47, the family court's obligation to issue "just and equitable" support and property awards empowers the court to refuse, under equitable principles, to fully enforce an otherwise valid premarital agreement. We disagree.

Section 10 of the Hawaii Act specifically states that such premarital agreements are valid and enforceable if otherwise valid as contracts. Unless the agreement rises to the level of unconscionability, a merely "inequitable" contract is not unenforceable under contract law.[1] Furthermore, when a premarital agreement setting

---

[1] Nor can it be said that enforcement of inequitable premarital agreements violates public policy as the Hawaii Act itself reflects a public policy in favor of enforcement of such agreements.

forth support and property division in the event of divorce is *not unconscionable* and has been *voluntarily* entered into by the parties with knowledge of the financial situation of the prospective spouse, enforcement of the agreement does not violate the principle of a "just and equitable" award under HRS § 580-47.

Under the facts of this case, the only plausible grounds for not enforcing the agreement under contract law are: 1) the absence of true assent to the agreement due to duress, coercion, undue influence, or any other circumstance indicating that wife did not freely and voluntarily enter into the agreement; and 2) unconscionability.

There is no specific finding by the family court on whether wife freely and voluntarily entered into the premarital agreement. The court found that the agreement was prepared one day prior to the marriage and wife was not represented by counsel. These findings, although relevant, are insufficient for this court to conclude that wife voluntarily executed the agreement.

### III.

The Hawaii Supreme Court discussed the issue of "unconscionability" in two cases, one involving a non-UCC real estate lease agreement and the other being a sale-of-goods UCC case. In both cases, the court adopted the "UCC definition" by looking to the comment to UCC § 2-302(2) or HRS § 490:2-302 (the Hawaii equivalent of the former). *See City and County of Honolulu v. Midkiff,* 62 Haw. 411, 418, 616 P.2d 213, 218 (1980); *Earl M. Jorgensen Co. v. Mark Construction,* 56 Haw. 466, 474, 540 P.2d 978, 984 (1975). The comment states:

> The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. ... The principle is one of the prevention of oppression and unfair surprise (Cf. Campbell Soup Co. v. Wentz, 172 F.2d 80 (3rd Cir. 1948)) and not of disturbance of allocation of risks because of superior bargaining power.

HRS § 490:2-302 comment.

It is apparent that two basic principles are encompassed within the concept of unconscionability, one-sidedness and unfair surprise. As applied to premarital agreements, one-sidedness would mean that the agreement leaves a post-divorce economic situation that is unjustly disproportionate. Unfair surprise would mean that one party did not have full and adequate knowledge of the other party's financial condition when the premarital agreement was executed.

The family court summarily concluded that $1000 per month in spousal support was unconscionable when viewed at the time of divorce. The comment this court relied on in *Midkiff* and *Jorgensen,* however, states that unconscionability is to be determined not at the time of divorce, but "under the circumstances existing at the time of the making of the contract." HRS § 490:2-302 comment. Nevertheless, it is in the best interest of the state that the financial well-being of the parties at the time of divorce be preserved by taking into consideration factors and circumstances arising throughout the marriage in determining whether the support provision of the premarital agreement is unconscionable. Indeed, each of the thirteen factors that HRS § 580-47[2] specifically requires a

---

[2] HRS § 580-47 states, in relevant part:

In addition to any other relevant factors considered, the court, in ordering spousal support and maintenance, shall consider the following factors:
  (1) Financial resources of the parties;
  (2) Ability of the party seeking support and maintenance to meet his or her needs independently;
  (3) Duration of the marriage;
  (4) Standard of living established during the marriage;
  (5) Age of the parties;
  (6) Physical and emotional condition of the parties;
  (7) Usual occupation of the parties during the marriage;
  (8) Vocational skills and employability of the party seeking support and maintenance;
  (9) Needs of the parties;
  (10) Custodial and child support responsibilities;
  (11) Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance;
  (12) Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made;
  (13) Probable duration of the need of the party seeking support and maintenance.

court to consider in making a "just and equitable" spousal support and maintenance award can only be fully evaluated at the time of divorce. So, too, whether the support provision of the premarital agreement is unconscionable can only be determined at the time of divorce by reviewing and considering all relevant factors and circumstances occurring after the execution of the premarital agreement. To enforce a spousal support provision of a premarital agreement because it was reasonable at the time of execution of the agreement can result in unforeseen economic hardship to a spouse that may shock the conscience of the court due to relevant changes in the circumstances of the marriage by the time of divorce. Public policy mandates against the enforcement of unconscionable support payments.

The Supreme Court of Ohio has stated:

> In the review of provisions in antenuptial agreements regarding *maintenance or sustenance* alimony, a further standard of review must be applied — one of conscionability of the provisions at the time of the divorce or separation. . . . [P]rovisions relating to maintenance or sustenance may lose their validity by reason of changed circumstances which render the provisions unconscionable as to one or the other at the time of the divorce of the parties. Accordingly, such provisions may, upon a review of all of the circumstances, be found to have become voidable at the time of the divorce or dissolution.

> We believe that the underlying state interest in the welfare of the divorced spouse, when measured against the rights of the parties to freely contract, weighs in favor of the court's jurisdiction to review, at the time of a subsequent divorce, the terms in an antenuptial agreement providing sustenance alimony for one of the parties. There is sound public policy rationale for not strictly enforcing such a provision which, even though entered into in good faith and reasonable at the time of execution, may have become unreasonable or unconscionable as to its application to the spouse upon divorce. It is a valid interest of the state to mitigate potential harm, hardship, or disadvantage to a spouse which would be occasioned by the breakup of the marriage . . . .

*Gross v. Gross*, 464 N.E.2d 500, 509 (Ohio 1984) (footnote omitted).

Here, husband was Vice Chairman of the Board of D'Arcy Advertising with an annual income of $285,000 and a net worth of approximately $1.8 million at the time the premarital agreement was executed. Wife was his secretary and had no assets other than some jewelry. She had stopped working when they were married. The record does not indicate wife's annual income from her secretarial job nor her future earning potential at the time of divorce. The record does not make clear what factors and circumstances the family court considered in determining husband's and wife's respective financial needs upon divorce. Whether the $1000 a month support payments to wife is too one-sided cannot be determined without more appropriate findings and conclusions by the family court.

The record in this case is not clear as to the extent of wife's knowledge of husband's financial condition at the time of execution of the premarital agreement. Husband had attached statements indicating his assets and liabilities to the agreement. The family court found that these statements "were not complete disclosures, although they were substantially complete." Without more definitive findings and conclusions as to the accuracy and completeness of the statements, we are unable to evaluate the element of unfair surprise to wife.

## IV.

Husband contends that the $150,000 property award to wife was an abuse of discretion based on *Cassiday v. Cassiday*, 68 Haw. ____, 716 P.2d 1133 (1986). There we said that "[i]t is generally accepted that each divorcing party is entitled to the date of marriage net value of his or her premarital property." 716 P.2d at 1138. Husband argues that he should not have to give up $150,000 of his property because he owned virtually all the valuable property brought into the marriage and at the time of divorce.

In *Cassiday*, however, we also stated that:

Hawaii Revised Statutes (HRS) § 580-47(a) (3) (Supp. 1984) vests in the trial court the discretion to divide all of the property of the parties, whether community, joint or separate according to what is "just and equitable." This includes the discretion to award separate property to the non-owning spouse.

. . . .

... [T]he source of the asset is but one of the "circumstances of the case," as is a spouse's positive or negative effect on the accumulation or preservation of the separate property of the spouse.

*Cassiday,* 716 P.2d at 1136 (citations and footnote omitted). Thus, it was within the family court's discretion to award wife part of husband's premarital property.[3]

In deciding to award wife $150,000 out of the husband's net worth of over $1,000,000 at the time of divorce, the court relied on many factors, including the assets, liabilities and income of the parties, their respective employment (including the fact that the wife gave up opportunities in quitting her job upon marriage), the standard of living established during the marriage, and the fact that the wife was to have primary physical custody of the couple's child. We hold that the award was not an abuse of discretion.

V.

Husband's remaining contentions are without merit.

The decision of the ICA is affirmed in part, and vacated in part. We vacate the affirmance of the spousal support order and remand this case to the family court for further proceedings to determine the issues of "voluntariness" and "unconscionability" not inconsistent with this opinion.

*Reese v. Reese, No. 10740*

Certiorari was granted to Thomas Vyn Reese, Sr., petitioner-appellee, to review the decision of the Intermediate Court of Appeals (ICA) vacating the property division portion of the family court's divorce decree.

On January 6, 1974, prior to their marriage, Mr. and Mrs. Reese executed a premarital agreement which provided that property owned by either party at the time of the marriage, or sub-

---

[3] The wife is limited, however, to a maximum of 50% of the husband's premarital property. *Cf. Cassiday,* 716 P.2d at 1138 (limiting the non-owning spouse to a maximum of half *the appreciation* on the owner's separate property).

sequently received through inheritance, or the income on and/or enhanced value of such property shall remain the separate property of the respective party in the event of divorce.

On May 23, 1985, the family court entered a Decree of Absolute Divorce and issued a Decision and Order that, inter alia, awarded Mrs. Reese property worth $66,521. The court stated that the premarital agreement was merely one factor it considered in making the property award. Mrs. Reese appealed.

The ICA ruled that under the circumstances of the case, any division of property leaving Mrs. Reese with property valued at less than $125,000 was an abuse of discretion, and therefore, remanded the case for further proceedings. We reject the ICA's position and hold that the premarital agreement should have been fully enforced. With one minor exception,[4] the other portions of the family court's Decision and Order were affirmed. We affirm the ICA on these latter matters.

As in the *Lewis* case, the Reese's premarital agreement was entered into prior to the enactment of the Hawaii Act; therefore, the enforcement provision of that Act (Section 6) is inapplicable to this case. If the premarital agreement is a valid contract, the agreement must be enforced. *See* Section 10 of the Hawaii Act. As in *Lewis*, based on contract law, the agreement will not be enforced: 1) if Mrs. Reese did not freely and voluntarily enter into the agreement; or 2) if the agreement is unconscionable.

The family court in its Findings of Fact found that Mrs. Reese executed the premarital agreement voluntarily and knowingly without undue influence or coercion. The court resolved the conflicting testimony and evidence in favor of Mr. Reese. In reviewing the record, we do not find the court's finding to be clearly erroneous.

We held in *Lewis* that two basic principles underlie the doctrine of unconscionability, one-sidedness and unfair surprise. We also held that in determining the unconscionability of a spousal support provision, the court must consider, at the time of divorce, all relevant factors and circumstances including those occurring after the execution of the premarital agreement. In this case, the premarital agreement provided for property division and not spousal support.

---

[4] See discussion regarding IMMT franchise.

We find that the public policy considerations enunciated in *Lewis* relative to spousal support have no bearing on and applicability to property division in a premarital agreement. We, therefore, hold that the issue of unconscionability of a provision governing division of property in a premarital agreement should be evaluated at the time the agreement was executed.

The agreement reserves to Mr. Reese premarital and inherited property as separate property not subject to division in case of divorce. We stated in *Cassiday v. Cassiday,* 68 Haw. ____, ____, 716 P.2d 1133, 1138 (1986), that "[i]t is generally accepted that each divorcing party is entitled to the date of marriage net value of his or her premarital property and the date of acquisition net value of gifts and inheritances which he or she received during the marriage."[5] After careful review of the record, we conclude that the reservation of premarital and inherited property, and the income from and any enhanced value of such property, to Mr. Reese was not unacceptably one-sided at the time the agreement was executed.

As to the element of unfair surprise, the family court found that prior to the execution of the agreement, Mr. Reese had fully disclosed to Mrs. Reese the nature of his property holdings and a "not unrealistic" estimate of the value of his separate estate. Although our review of the record discloses conflicting evidence on this point, we conclude that the family court's finding on this issue is not clearly erroneous.

In our view the agreement was not unconscionable because the premarital agreement, at the time of execution, was not unacceptably one-sided and did not involve unfair surprise. We hold that the agreement was a valid contract and should have been fully enforced by the family court. In determining the division of property between Mr. and Mrs. Reese, however, the family court stated that the agreement was only one factor it took into consideration. The family court did not make sufficient findings to allow us to determine the distribution of property that would result from full enforcement of the agreement. In light of our holding, the family

---

[5] Although there is no general rule regarding division of the *appreciation* on such property, *see id.* at 1138, *Cassiday* acknowledged that a trial court could determine that all appreciation goes to the owner if that would be fair and equitable. *See id.*

court is directed, on remand, to redetermine the division of property in strict accordance with the agreement by entering appropriate findings of fact and conclusions.

The ICA held that the family court clearly erred in assigning a value of $10,000 to the IMMT franchise and corrected the amount to $1,000. Mr. Reese does not challenge this holding in his petition.

Mrs. Reese's cross-petition for certiorari challenging the ICA's affirmation of the values placed on certain property by the family court was denied as untimely filed. We concur.

The family court's order of division of property is vacated and this case is remanded for further proceedings not inconsistent with this opinion.

*Gary V. Dubin* (*R.Steven Geshell* with him on the brief) for petitioner-appellant *Daniel Harbert Lewis.*

*Maurice Sapienza* for respondent-appellee *Patricia Ann Lewis.*

*Steven R. Scott (Scott and Ohigashi)* for petitioner-appellee *Thomas Vyn Reese, Sr.*

*Edward F. Mason (Eugene S. Evans, Jr.* with him on the brief) for respondent-appellant *Beverly Jean Reese.*