Electronically Filed
Supreme Court
SCWC-12-0000819
14-JUL-2017
08:37 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

KRISHNA NARAYAN; SHERRIE NARAYAN; VIRENDRA NATH;
NANCY MAKOWSKI; KEITH MACDONALD AS CO-TRUSTEE FOR THE
DKM TRUST DATED OCTOBER 7, 2011; SIMON YOO; SUMIYO SAKAGUCHI;
SUSAN RENTON, AS TRUSTEE FOR THE RENTON FAMILY TRUST
DATED 12/3/09; STEPHEN XIANG PANG; FAYE WU LIU; MASSY MEHDIPOUR
AS TRUSTEE FOR MASSY MEHDIPOUR TRUST DATED JUNE 21, 2006;
G. NICHOLAS SMITH; TRISTINE SMITH; RITZ 1303 RE, LLC, a Colorado
Limited Liability Company; and BRADLEY CHAFFEE AS TRUSTEE OF THE
CHARLES V. CHAFFEE BRC STOCK TRUST DATED 12/1/99
AND THE CLIFFORD W. CHAFFEE BRC STOCK TRUST DATED 1/4/98,
Petitioners/Plaintiffs-Appellees,

vs.

THE RITZ-CARLTON DEVELOPMENT COMPANY, INC.;
THE RITZ-CARLTON MANAGEMENT COMPANY, LLC; JOHN ALBERT; EDGAR GUM,
Respondents/Defendants-Appellants,

and

MARRIOTT INTERNATIONAL INC.; MAUI LAND & PINEAPPLE CO., INC.;
EXCLUSIVE RESORTS, LLC; KAPALUA BAY, LLC;
ASSOCIATION OF APARTMENT OWNERS OF KAPALUA BAY CONDOMINIUM;
CAROLINE PETERS BELSOM; CATHY ROSS; ROBERT PARSONS;
RYAN CHURCHILL; THE RITZ-CARLTON HOTEL COMPANY, L.L.C.;
MARRIOTT VACATIONS WORDWIDE, CORPORATION; MARRIOTT OWNERSHIP
RESORTS, INC.; MARRIOTT TWO FLAGS, LP; MH KAPALUA VENTURE, LLC;
MLP KB PARTNER LLC; KAPALUA BAY HOLDINGS, LLC; ER KAPALUA
INVESTORS FUND, LLC; ER KAPALUA INVESTORS FUND HOLDINGS, LLC;
EXCLUSIVE RESORTS DEVELOPMENT COMPANY, LLC; and EXCLUSIVE RESORTS
CLUB I HOLDINGS, LLC, Respondents/Defendants.

SCWC-12-0000819

ON REMAND FROM THE UNITED STATES SUPREME COURT
(CAAP-12-0000819; CIV. NO. 12-1-0586(3))

JULY 14, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK, JJ.,
AND CIRCUIT JUDGE NAKASONE, IN PLACE OF ACOBA, J., RECUSED[1]

OPINION OF THE COURT BY NAKAYAMA , J.

## I. INTRODUCTION

In Narayan v. Ritz-Carlton Development Co., 135 Hawaiʻi
327, 350 P.3d 995 (2015) (Narayan I), this court held that the
Plaintiffs, a group of individual condominium owners, could not
be compelled to arbitrate claims arising from the financial
breakdown of a Maui condominium project.  In reaching this
conclusion, this court determined that the arbitration clause was
unenforceable because the Plaintiffs did not unambiguously assent
to arbitration and because the terms of arbitration were
unconscionable.

On January 11, 2016, the Supreme Court of the United
States (Supreme Court) vacated and remanded Narayan I to this
court for further consideration in light of its recent decision
in DIRECTV, Inc. v. Imburgia, 136 S. Ct. 463 (2015).  In
Imburgia, the Supreme Court determined that state law must place

_____

[1]     At the time this case was originally pending before this court,
Associate Justice Simeon R. Acoba, Jr. was a member of the court; however, he
was recused from the case and Judge Nakasone sat in his place.  Justice Acoba
retired on February 29, 2014.

2

arbitration agreements "on equal footing with all other contracts." Id. at 471 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).

Again recognizing this principle, we affirm our decision in Narayan I, concluding that, under long-standing Hawaiʻi contract law, the arbitration clause is unconscionable. As such, we vacate the Intermediate Court of Appeals' (ICA) October 28, 2013 judgment on appeal, affirm the Circuit Court of the Second Circuit's (circuit court) August 28, 2012 order denying the Defendants' motion to compel arbitration, and remand the case to the circuit court for further proceedings consistent with this opinion.

## II.  BACKGROUND

### A.  Factual History

The following facts[2] are summarized from this court's earlier opinion in Narayan I.

Petitioners/Plaintiffs-Appellees Krishna Narayan et al. (collectively, the Homeowners) purchased ten condominium units

---

[2]    These facts, drawn from the pleadings, are taken as true for the limited purpose of reviewing the Defendants' motion to compel arbitration. Douglass v. Pflueger Haw., Inc., 110 Hawaiʻi 520, 524, 135 P.3d 129, 133 (2006) ("The standard [for a petition to compel arbitration] is the same as that which would be applicable to a motion for summary judgment . . ."); Nuuanu Valley Ass'n v. City & Cty. of Honolulu, 119 Hawaiʻi 90, 96, 194 P.3d 531, 537 (2008) ("[In evaluating a motion for summary judgment,] we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion." (quoting Kahale v. City & Cty. of Honolulu, 104 Hawaiʻi 341, 344, 90 P.3d 233, 236 (2004))).

3

from Kapalua Bay, LLC, a joint venture owned by Marriot International, Inc., Exclusive Resorts, Inc., and Maui Land & Pineapple Co., Inc. (collectively, the Defendants). These units were part of a Maui condominium development formerly known as the Ritz-Carlton Club & Residences at Kapalua Bay (the project).[3]

The Homeowners entered into purchase agreements with the Defendants when they purchased their condominiums. The purchase agreements contain two clauses relating to dispute resolution: a jury waiver clause and an attorneys' fee clause. While these clauses do not mention a binding agreement to arbitrate, the purchase agreement references another document, the Declaration of Condominium Property Regime of Kapalua Bay Condominium (declaration), which includes an arbitration clause. The Defendants recorded the declaration and the Association of Apartment Owners of Kapalua Bay Condominium Bylaws (AOAO bylaws) in the State of Hawaiʻi Bureau of Conveyances prior to the sale of the individual condominium units to the Homeowners. Additionally, the Defendants registered the Condominium Public Report (public report) with the Hawaiʻi Real Estate Commission. All of these documents are incorporated by reference through the

_____

[3] Respondents/Defendants-Appellants the Ritz-Carlton Development Company, Inc. and the Ritz-Carlton Management Company, LLC were the original development and management companies for the project, and were then wholly-owned subsidiaries of Marriott. Respondents/Defendants-Appellants John Albert and Edgar Gum served on the board of directors of the AOAO while allegedly being employed by either Marriott or Ritz-Carlton.

purchase agreement.

The arbitration clause is found towards the end of the thirty-six page condominium declaration and provides, in its entirety:

XXXIII. ALTERNATIVE DISPUTE RESOLUTION.

In the event of the occurrence of any controversy or claim arising out of, or related to, this Declaration or to any alleged construction or design defects pertaining to the Common Elements or to the Improvements in the Project ("dispute"), if the dispute cannot be resolved by negotiation, the parties to the dispute agree to submit the dispute to mediation by a mediator mutually selected by the parties.  If the parties are unable to agree upon a mediator, then the mediator shall be appointed by the American Arbitration Association.  In any event, the mediation shall take place within thirty (30) days of the date that a party gives the other party written notice of its desire to mediate the dispute.  If the dispute is not resolved through mediation, the dispute shall be resolved by arbitration pursuant to this Article and the then-current rules and supervision of the American Arbitration Association.  The duties to mediate and arbitrate hereunder shall extend to any officer, employee, shareholder, principal, partner, agent trustee-in-bankruptcy, affiliate, subsidiary, third-party beneficiary, or guarantor of all parties making or defending any claim which would otherwise be subject to this Article.
The arbitration shall be held in Honolulu, Hawaii before a single arbitrator who is knowledgeable in the subject matter at issue.  The arbitrator's decision and award shall be final and binding and may be entered in any court having jurisdiction thereof. <u>The arbitrator shall not have the power to award punitive, exemplary, or consequential damages, or any damages excluded by, or in excess of, any damage limitations expressed in this Declaration or any other agreement between the parties</u>.  In order to prevent irreparable harm, the arbitrator may grant temporary or permanent injunctive or other equitable relief for the protection of property rights.
Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other aspects of the dispute shall be interpreted in accordance with, and the arbitrator shall apply and be bound to follow, the substantive laws of the State of Hawaii.  Each party shall bear its own attorneys' fees associated with negotiation, mediation, and arbitration, and other costs and expenses shall be borne as provided by the rules of the American Arbitration Association.
If court proceedings to stay litigation or compel

arbitration are necessary, the party who unsuccessfully opposed such proceedings shall pay all associated costs, expenses, and attorneys' fees which are reasonably incurred by the other party.

The arbitrator may order the parties to exchange copies of nonrebuttable exhibits and copies of witness lists in advance of the arbitration hearing. However, the arbitrator shall have no other power to order discovery or depositions unless and then only to the extent that all parties otherwise agree in writing.

Neither a party, witness, or the arbitrator may disclose the facts of the underlying dispute or the contents or results of any negotiations, mediation, or arbitration hereunder without prior written consent of all parties, unless and then only to the extent required to enforce or challenge the negotiated agreement or the arbitration award, as required by law, or as necessary for financial and tax reports and audits.

No party may bring a claim or action, regardless of form, arising out of or related to this Declaration or to any construction or design defects claims pertaining to the Common Elements or to the Improvements of the Project, including any claim of fraud, misrepresentation, or fraudulent inducement, more than one year after the cause of action accrues, unless the injured party cannot reasonably discover the basic facts supporting the claim within one year.

Notwithstanding anything to the contrary in this Article, in the event of alleged violation of a party's property or equitable rights, including, but not limited to, unauthorized disclosure of confidential information, that party may seek temporary injunctive relief from any court of competent jurisdiction pending appointment of an arbitrator. The party requesting such relief shall simultaneously file a demand for mediation and arbitration of the dispute, and shall request the American Arbitration Association to proceed under its rules for expedited procedures. In no event shall any such court-ordered temporary injunctive relief continue for more than thirty (30) days.

If any part of this Article is held to be unenforceable, it shall be severed and shall not affect either the duties to mediate and arbitrate hereunder or any other part of this Article.

(Emphases added.) Significantly, the underlined portions above indicate that the arbitration clause includes a limit on damages, a limit on discovery, and a confidentiality provision.

In April of 2012, the Homeowners learned that the Defendants had defaulted on loans encumbering the project and

6

that, as a result, the Defendants could not pay maintenance and operator fees to Marriott's management subsidiaries. The Defendants eventually defaulted on the AOAO assessments, abandoned the project, and revoked the Ritz-Carlton branding. Marriott or one of its subsidiaries withdrew approximately $1,300,000.00 from the AOAO operating fund and threatened to withdraw the remaining $200,000.00 from the fund. The AOAO board members, many of whom were employed by Marriott, Ritz-Carlton, and/or other interested entities, did not attempt to block Marriott from taking these actions but instead indicated that the multi-million dollar shortfall would have to be covered by the Homeowners.

## B.    Procedural History

On June 7, 2012, the Homeowners filed suit in the circuit court[4] asserting claims for breach of fiduciary duty, access to books and records, and injunctive/declaratory relief. The circuit court denied the Defendants' motion to compel arbitration, which the Defendants appealed. The ICA concluded that the parties had entered into a valid agreement to arbitrate, that the dispute fell within the scope of that agreement, and that the agreement was not procedurally unconscionable. Thus, the ICA held that the Defendants could compel the Homeowners to

---

[4]    The Honorable Joseph E. Cardoza presided.

arbitration.

On June 3, 2015, this court issued an opinion in Narayan I, vacating the ICA's judgment on appeal, affirming the circuit court's order denying the Defendants' motion to compel arbitration, and remanding the case to the circuit court for further proceedings consistent with the opinion. 135 Hawaiʻi at 339-40, 350 P.3d at 1007-08. This court held that the Homeowners could not be compelled to arbitrate for two reasons. First, this court determined that "the arbitration provision contained in the condominium declaration is unenforceable because the terms of the various condominium documents are ambiguous with respect to the Homeowners' intent to arbitrate." Id. at 335, 350 P.3d at 1003. Second, this court determined that portions of the arbitration clause were unconscionable. Id. at 336-39, 350 P.3d at 1004-07.

This court subsequently issued summary disposition orders in line with its opinion for two related cases, Nath v. Ritz-Carlton Hotel Co., No. SCAP-13-2732 (Haw. June 30, 2015)(SDO), and Narayan v. Marriott International, Inc., No. SCAP-13-3607 (Haw. June 30, 2015)(SDO), (collectively, the Narayan cases).

The Defendants filed petitions for writ of certiorari for the Narayan cases and, on January 11, 2016, the Supreme Court entered orders granting the petitions and vacating and remanding

8

the Narayan cases: "The judgment is vacated, and the case is remanded to the Supreme Court of Hawaii for further consideration in light of DIRECTV, Inc. v. Imburgia, [136 S. Ct. 463] (2015)."

On remand, both parties filed supplemental briefs addressing the impact of Imburgia on the Narayan cases.

## C.   The Imburgia Decision

The Imburgia lawsuit arose in 2008, when the plaintiffs, DIRECTV customers, challenged DIRECTV's early termination fees on the grounds that the fees violated California law.  136 S. Ct. at 466.  The service contract between the plaintiffs and DIRECTV included a binding arbitration provision and class action waiver.  Id.  The contract also provided that "if the 'law of your state' makes the waiver of class arbitration unenforceable, then the entire arbitration provision 'is unenforceable.'"  Id.

Prior to 2011, the class arbitration waiver clause was unenforceable under California law pursuant to the California Supreme Court's decision in Discover Bank v. Superior Court, 113 P.3d 1100 (Cal. 2005).  In Discover Bank, the California Supreme Court held that a waiver of class arbitration in a consumer contract of adhesion was unconscionable under California law and should not be enforced.  Id. at 1110.  However, in AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 352 (2011), the Supreme Court

held that the Discover Bank rule "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and that the Federal Arbitration Act (FAA) preempted and invalidated the rule. (Quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). Thus, after the 2011 Concepcion decision, class arbitration waiver clauses became enforceable under California law.

Following the Supreme Court's decision in Concepcion, DIRECTV requested that the matter be sent to arbitration pursuant to the arbitration clause. Imburgia, 136 S. Ct. at 466. The trial court denied that request and DIRECTV appealed. Id. The California Court of Appeal referenced two sections of California's Consumers Legal Remedies Act in holding that "the law of California would find the class action waiver unenforceable." Id. at 467. The California Supreme Court denied discretionary review and the Supreme Court accepted DIRECTV's petition for writ of certiorari. Id. at 467-68.

The Supreme Court stated that the issue before it was "whether the decision of the California court places arbitration contracts 'on equal footing with all other contracts.'" Id. at 468 (quoting Buckeye, 546 U.S. at 443). The Supreme Court concluded that "California courts would not interpret contracts other than arbitration contracts the same way" and offered six

10

bases for this conclusion. Id. at 469. Of relevance to this case, the Supreme Court determined that "nothing in the Court of Appeal's reasoning suggests that a California court would reach the same interpretation of 'law of your state' in any context other than arbitration" and that "the language used by the Court of Appeal focused only on arbitration." Id. at 469-70. Specifically, the Supreme Court noted that "[f]raming the question in [arbitration terms], rather than in generally applicable terms, suggests that the Court of Appeal could well have meant that its holding was limited to the specific subject matter of this contract--arbitration." Id. at 470.

Given these considerations, the Supreme Court concluded that "California's interpretation of the phrase 'law of your state' does not place arbitration contracts 'on equal footing with all other contracts.'" Id. at 471. As such, the Supreme Court held that "the Court of Appeal's interpretation is pre-empted by the Federal Arbitration Act." Id.

### III.  DISCUSSION

The FAA states that "an agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Federal Arbitration Act, 9 U.S.C. § 2 (2012).

11

The FAA "creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936 (9th Cir. 2001) (quoting Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988)). "Despite the 'liberal federal policy favoring arbitration agreements,' . . . state law is not entirely displaced from federal arbitration analysis." Id. at 936-37 (quoting Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000)). "[A]s long as state law defenses concerning the validity, revocability, and enforceability of contracts are generally applied to all contracts, and not limited to arbitration clauses, federal courts may enforce them under the FAA." Id. at 937; see also Concepcion, 563 U.S. at 339 ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."). Specifically, arbitration agreements, like all other contracts, "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

## A. Unconscionability

Under Hawaiʻi law, unconscionability is recognized as a

12

general contract defense:

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.  Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction.

City & Cty. of Honolulu v. Midkiff, 62 Haw. 411, 418, 616 P.2d 213, 218 (1980) (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)); see also Lewis v. Lewis, 69 Haw. 497, 501, 748 P.2d 1362, 1366 (1988) ("The basic test is whether . . . the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise . . .").

     In Midkiff, this court considered whether a general issue of material fact existed as to whether a condemnation clause in a lease was unconscionable.  62 Haw. at 416-17, 616 P.2d at 217.  In analyzing the facts of the case under the doctrine of unconscionability, this court observed that the lease was a standard pre-printed form, which "may indicate that there was no arms-length bargaining between the two parties." Id. at 417, 616 P.2d at 218.  Additionally, this court noted that there could have been a disparity in bargaining power that left the petitioner in a "take-it-or-leave-it position regarding the lease." Id. at 418, 616 P.2d at 218.  As such, this court

13

concluded that the petitioner did raise a genuine issue of material fact and remanded the case to the trial court to hold a hearing on the issue of the unconscionability of the condemnation clause.  Id.

Recent Hawaiʻi decisions have defined unconscionability more specifically by articulating two principles that make up the doctrine:  "Unconscionability encompasses two principles:  one-sidedness and unfair surprise."  Balogh v. Balogh, 134 Hawaiʻi 29, 41, 332 P.3d 631, 643 (2014); see also Lewis, 69 Haw. at 502, 748 P.2d at 1366 ("It is apparent that two basic principles are encompassed within the concept of unconscionability, one-sidedness and unfair surprise.").

These principles are also characterized as procedural and substantive unconscionability.[5]  See Balogh, 134 Hawaiʻi at 41, 332 P.3d at 643.  Procedural unconscionability, or unfair surprise, focuses on the "process by which the allegedly offensive terms found their way into the agreement."  7 Joseph M. Perillo, Corbin on Contracts § 29.1 (Rev. ed. 2002).  Substantive unconscionability, in contrast, focuses on the content of the agreement and whether the terms are one-sided, oppressive, or

_____

[5]    Generally, both procedural and substantive unconscionability must be present in order to make a contract unconscionable; however, Hawaiʻi courts "have recognized that, under certain circumstances, an impermissibly one-sided agreement may be unconscionable even if there is no unfair surprise."  Balogh, 134 Hawaiʻi at 41, 332 P.3d at 643.  Such an analysis is not necessary in this case because the arbitration clause is both procedurally and substantively unconscionable.

14

"unjustly disproportionate." Balogh, 134 Hawaiʻi at 41, 332 P.3d at 643; Perillo, supra, § 29.1.

Thus, under the common law of Hawaiʻi, unconscionability is a generally applicable contract defense. We turn now to analyzing the facts of the case under this doctrine.

### 1. Procedural Unconscionability

Procedural unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice." Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988). Courts consider such factors as "whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power" between the parties. Id.; see also Perillo, supra, § 29.4 (noting that the following elements factor into a determination of procedural unconscionability: superior bargaining power, lack of meaningful choice for the weaker party, form contracts that are "heavily weighted in favor of one party and offered on a take it or leave it basis," and where "freedom of contract is exploited by a stronger party").

Procedural unconscionability often takes the form of adhesion contracts, where a form contract is created by the stronger of the contracting parties, and the terms "unexpectedly

15

or unconscionably limit the obligations and liability of the weaker party." Nacino v. Koller, 101 Hawaiʻi 466, 473, 71 P.3d 417, 424 (2003) (quoting Leong v. Kaiser Found. Hosp., 71 Haw. 240, 247, 788 P.2d 164, 168 (1990)). Although adhesion contracts are not unconscionable per se, they are defined by a lack of meaningful choice and, thus, often satisfy the procedural element of unconscionability.

In this case, the contracting process for the arbitration clause exhibits elements of procedural unconscionability. The party with the superior bargaining strength, the Defendants, not only drafted the arbitration clause found in the declaration, but they also recorded the declaration in the Bureau of Conveyances prior to the execution of the purchase agreements. The Homeowners were required to conform to the terms of the declaration as recorded if they wanted to purchase a Ritz-Carlton condominium on Maui. Thus, the declaration is adhesive in the sense that it was "created by the stronger of the contracting parties" on a "take-it-or-leave-it" basis. Nacino, 101 Hawaiʻi at 473, 71 P.3d at 424; Midkiff, 62 Haw. at 418, 616 P.2d at 218 (noting that a "disparity in bargaining position" and a "take-it-or-leave-it" position are factors in determining whether a contract is unconscionable).

In addition to the inequality of bargaining power

16

described above,[6] there is an element of unfair surprise in that the arbitration clause is buried at the end of the declaration and is ambiguous when read in conjunction with the other controlling documents, including the purchase agreement and the public report.  For instance, the arbitration clause is on page thirty-four of the thirty-six page declaration and provides that, if a dispute cannot be resolved through negotiation or mediation, "the dispute shall be resolved by arbitration."  (Emphasis added.)  In contrast, the purchase agreement does not provide for mandatory arbitration but instead contains:  1) a waiver of jury trial clause, which states that the parties "expressly waive their respective rights to a jury trial on any claim or cause of action that is based upon or arising out of this Purchase Agreement" and that "[v]enue for any cause of action brought by Purchaser hereunder shall be in the Second Circuit Court, State of Hawaii," and 2) an attorneys' fees clause, which provides for fees as a result of "any legal or other proceeding."  Similarly, the public report provides that "[t]he provisions of [the controlling documents, including the declaration] are intended to be, and in most cases are, enforceable in a court of law."

Thus, the controlling documents offer conflicting

---

[6]     This court has noted that "inequality of bargaining power, *in and of itself*, does not transform an agreement to arbitrate . . . into an unenforceable contract of adhesion."  Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 248 n.27, 921 P.2d 146, 168 n.27 (1996).

17

guidance on dispute resolution, with the declaration mandating arbitration for the parties, while the purchase agreement and public report allow for disputes to be litigated through traditional legal proceedings.  Such ambiguity in the controlling documents has the potential to confuse or mislead the non-drafting parties, and deprives those parties from a full and adequate understanding of their rights under contract.  See Balogh, 134 Hawaiʻi at 41, 332 P.3d at 643 (explaining that, in the context of postmarital and separation agreements, unfair surprise means that "one party did not have full and adequate knowledge of the other party's financial condition when the . . . agreement was executed").

For these reasons, we conclude that the arbitration clause satisfies the procedural element of unconsionability.

## 2.    Substantive Unconscionability

Substantive unconscionability focuses on the one-sidedness of the agreement.  Lewis, 69 Haw. at 502, 748 P.2d at 1366; Balogh, 134 Hawaiʻi at 41, 332 P.3d at 643; Earl M. Jorgensen Co. v. Mark Constr., Inc., 56 Haw. 466, 474, 540 P.2d 978, 984 (1975); see also Gillman, 534 N.E.2d at 829 ("This question entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.").  Here, the

18

Homeowners argue that the arbitration clause is substantively unconscionable because it eliminates rights to punitive, exemplary, and consequential damages, precludes discovery, imposes a confidentiality requirement, and imposes a one-year statute of limitations.[7] We agree, and affirm our earlier decision that portions of the arbitration clause are substantively unconscionable.

### a.    Damages Provision

"Punitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future."  Masaki v. Gen. Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989).  "Since the purpose of punitive damages is not compensation of the plaintiff but rather punishment and deterrence, such damages are awarded only when the egregious nature of the defendant's conduct makes such a remedy appropriate."  Id.  Courts often look to the intentional, deliberate, and outrageous nature of the defendant's actions when considering punitive damages.  Id.

Hawaiʻi law disfavors limiting damages for intentional

---

[7]     We do not decide whether the contractually shortened limitations period is unconscionable because there has been no assertion that the Homeowners' claims are barred by that provision.

19

and reckless conduct.  In Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. Partnership, 115 Hawaiʻi 201, 224, 166 P.3d 961, 984 (2007), this court held that a contract provision limiting tort liability would violate public policy to the extent that it attempted to waive liability for criminal misconduct, fraud, or willful misconduct.  Further, we have acknowledged that "[e]xculpatory contracts are not favored by the law because they tend to allow conduct below the acceptable standard of care." Fujimoto v. Au, 95 Hawaiʻi 116, 155, 19 P.3d 699, 738 (2001) (quoting Yauger v. Skiing Enters., Inc., 557 N.W.2d 60, 62 (Wis. 1996)).  Such provisions "are strictly construed against parties relying on them" and will be held void if the agreement is, inter alia, "gained through inequality of bargaining power."  Id. at 156, 19 P.3d at 739.

While not wholly exculpatory, the damages provision at issue in this case similarly limits liability because it restricts the amount or type of recoverable damages.  When coupled with "inequality of bargaining power," such a limitation on liability will likewise be unenforceable.  See Lucier v. Williams, 841 A.2d 907, 912 (N.J. Super. Ct. App. Div. 2004) (concluding that a limitation of liability provision was unconscionable because:  1) it was incorporated into a contract of adhesion, 2) the parties had "grossly unequal bargaining

20

status" and, 3) the limit on recoverable damages allowed the drafting party to avoid almost all responsibility for his actions); Cook v. Pub. Storage, Inc., 761 N.W.2d 645, 668 (Wis. Ct. App. 2008) ("With respect to punitive damages, we conclude the limitation of liability clause is unenforceable because it is against public policy.  Punitive damages serve the public policy purposes of punishing wrongdoers and deterring others.").

In this case, there is a damages provision that was, as discussed in the previous section, gained through inequality of bargaining power.  Additionally, the provision prevents an arbitrator from awarding "punitive, exemplary, or consequential damages," thereby shielding a defendant from paying such damages to an aggrieved party, even upon a showing of egregious or outrageous conduct by the defendant.  It would create an untenable situation if parties of superior bargaining strength could use adhesionary contracts to insulate "aggravated or outrageous misconduct" from the monetary remedies that are designed to deter such conduct.  Masaki, 71 Haw. at 6, 780 P.2d at 570.  Under Hawaiʻi law, such provisions, regardless of whether they are found in arbitration agreements or other contracts, are substantively unconscionable.

### b. Discovery Provision

Adequate discovery is necessary to provide claimants "a

fair opportunity to present their claims." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991). In Hawaiʻi, discovery rules "reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged." Hac v. Univ. of Haw., 102 Hawaiʻi 92, 100, 73 P.3d 46, 54 (2003) (quoting Wakabayashi v. Hertz Corp., 66 Haw. 265, 275, 660 P.2d 1309, 1315 (1983)); see also Hawaiʻi Rules of Civil Procedure (HRCP) Rule 26(b)(1)(A) (2015) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.").

In the arbitration context, limitations on discovery serve an important purpose because "the underlying reason many parties choose arbitration is the relative speed, lower cost, and greater efficiency of the process." Kona Vill. Realty, Inc. v. Sunstone Realty Partners, XIV, LLC, 123 Hawaiʻi 476, 477, 236 P.3d 456, 457 (2010). As such, limitations on discovery may be enforceable in the arbitral forum, so long as they are reasonable and do not hinder a party's ability to prove or defend a claim. See Hac, 102 Hawaiʻi at 100, 73 P.3d at 54 (noting that Hawaiʻi law favors disclosure of all relevant, unprivileged information); Gilmer, 500 U.S. at 31 (determining that the discovery allowed in

the arbitration proceeding - document production, information requests, depositions, and subpoenas - was sufficient to allow plaintiff "a fair opportunity to present [his] claims").

In the current case, the discovery provision in the arbitration clause provides:

> The arbitrator may order the parties to exchange copies of nonrebuttable exhibits and copies of witness lists in advance of the arbitration hearing. However, the arbitrator shall have no other power to order discovery or depositions unless and then only to the extent that all parties otherwise agree in writing.

For two reasons, this provision is unenforceable.

First, the discovery provision places severe limitations on the disclosure of relevant information and hinders the Homeowners' ability to prove their claims. Except for "nonrebuttable" exhibits and witness lists, the Homeowners are hindered in their ability from discovering potentially relevant information for their claims against the Defendants. This restriction runs in direct contravention to Hawaii's "basic philosophy" that a party is entitled to all relevant, unprivileged information pertaining to the subject matter of the action. Hac, 102 Hawaiʻi at 100, 73 P.3d at 54. On this basis alone, we hold the discovery provision unconscionable.

Second, the discovery provision violates parts of Hawaiʻi Revised Statutes (HRS) § 658A, which grant an arbitrator considerable discretion in permitting discovery. Specifically,

23

HRS § 658A-17 (Supp. 2001) provides:

> (a) <u>An arbitrator may issue a subpoena for the attendance of a witness and for the production of records and other evidence at any hearing and may administer oaths</u>.  A subpoena shall be served in the manner for service of subpoenas in a civil action and, upon motion to the court by a party to the arbitration proceeding or the arbitrator, enforced in the manner for enforcement of subpoenas in a civil action.
>
> (b) <u>In order to make the proceedings fair, expeditious, and cost effective, upon request of a party to or a witness in an arbitration proceeding, an arbitrator may permit a deposition of any witness to be taken for use as evidence at the hearing</u>, including a witness who cannot be subpoenaed for or is unable to attend a hearing.  The arbitrator shall determine the conditions under which the deposition is taken.

(Emphases added.)  Pursuant to HRS § 658A-4(b)(1) (Supp. 2001),[8] the above subsections of HRS § 658A-17 cannot be waived by parties to an arbitration agreement.  As such, the discovery provision, which waives the requirements of HRS § 658A-17, violates HRS § 658A-4(b)(1).  Additionally, the discovery provision undermines the discretion generally afforded arbitrators.  <u>See</u> HRS § 658A-17(c) ("An arbitrator may permit such discovery as the arbitrator decides is appropriate in the circumstances, taking into account the needs of the parties to the arbitration proceeding and other affected persons and the desirability of making the proceeding fair, expeditious, and cost effective.")

---

[8]    HRS § 658A-4(b)(1) provides:  "(b) Before a controversy arises that is subject to an agreement to arbitrate, <u>a party to the agreement shall not:  (1) Waive or agree to vary the effect of the requirements of</u> section 658A-5(a), 658A-6(a), 658A-8, <u>658A-17(a), 658A-17(b)</u>, 658A-26, or 658A-28."  (Emphases added.)

Although specific to arbitration, the referenced sections of HRS § 658A-17 reflect Hawaii's "basic philosophy" on discovery, and mirror similar provisions found in the Hawaiʻi Rules of Civil Procedure.  See HRCP Rule 45 (2015) (allowing courts to issue subpoenas for the attendance of witnesses, production of documentary evidence, and taking of depositions); HRCP Rule 26 (2015) (allowing parties to obtain discovery of relevant information through a variety of methods).  As such, the discovery provision is at odds with Hawaii's long-standing legal precedent of allowing parties to access relevant information for their claims.  Such an unreasonable limitation on discovery, in either a litigation or an arbitration context, is substantively unconscionable under Hawaiʻi law.

### c.    Confidentiality Provision

As is the case with discovery limitations, confidentiality provisions are not per se substantively unconscionable.  However, where an agreement contains severe limitations on discovery alongside a confidentiality provision, the plaintiff may be deprived of the ability to adequately discover material information about his or her claim.  See Ting v. AT&T, 319 F.3d 1126, 1151 (9th Cir. 2003) ("Although facially neutral, confidentiality provisions usually favor companies over individuals. . . . [B]ecause companies continually arbitrate the

25

same claims, the arbitration process tends to favor the company."); Zuver v. Airtouch Commc'ns, Inc., 103 P.3d 753, 765 (Wash. 2004) ("As written, the [confidentiality] provision hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations.  Moreover, keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process.").

In Hawai'i Medical Ass'n v. Hawai'i Medical Service Ass'n, 113 Hawai'i 77, 94, 148 P.3d 1179, 1196 (2006), this court recognized that non-drafting parties to arbitration agreements are sometimes confronted with unfair limitations, and noted that the arbitration agreement at issue prevented the non-drafting party from "placing evidence of broad-based, systemic wrongs before an internal review panel."  This court concluded that such one-sided restrictions foreclosed parties from adequately pursuing their claims and therefore could not be upheld.  Id.

The confidentiality provision in the current case provides:  "Neither a party, witness, or the arbitrator may disclose the facts of the underlying dispute or the contents or results of any negotiation, mediation, or arbitration hereunder without prior written consent of all parties."

Similar to Haw. Med. Ass'n, the confidentiality

26

provision at issue here, especially when read in conjunction with the discovery provision, impairs the Homeowners' ability to investigate and pursue their claims. If the confidentiality and discovery provisions in this case were enforced as written, the Homeowners would only be able to obtain discovery by consent and would be prevented from discussing their claims with other potential plaintiffs because the confidentiality provision would make them unable to "disclose the facts of the underlying dispute." See Pokorny v. Quixtar, Inc., 601 F.3d 987, 1002 (9th Cir. 2010) ("The confidentiality provision in this case . . . unfairly favors Quixtar because it prevents Plaintiffs from discussing their claims with other potential plaintiffs and from discovering relevant precedent to support their claims.")

In addition to detrimentally affecting the Homeowners' ability to investigate their claims, the confidentiality provision insulates the Defendants from potential liability. See Ting, 319 F.3d at 1152 (noting that, through a confidentiality provision, AT&T "placed itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, AT&T accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract" and that, furthermore, "the unavailability of arbitral decisions may prevent potential plaintiffs from

27

obtaining the information needed to build a case of intentional misconduct or unlawful discrimination against AT&T").  We therefore hold that the confidentiality provision of the arbitration clause is substantively unconscionable because it impairs the Homeowners' ability to investigate and pursue their claims.

In sum, we affirm, on state contract grounds, that the arbitration clause is both procedurally and substantively unconscionable.[9]

### 3.    Severability of Unconscionable Provisions

The Defendants argue that, if this court determines that certain provisions in the arbitration agreement are unconscionable, those provisions should be severed from the arbitration clause and the rest of the arbitration clause should be enforced.

"[T]he general rule is that severance of an illegal provision of a contract is warranted and the lawful portion of the agreement is enforceable when the illegal provision is not central to the parties' agreement."  <u>Beneficial Haw., Inc. v. Kida</u>, 96 Hawaiʻi 289, 311, 30 P.3d 895, 917 (2001).  However, where unconscionability so pervades the agreement, the court may

---

[9]    Because we conclude that the arbitration clause is unconscionable, it is unnecessary for us to address whether ambiguity existed as to the intent to arbitrate, as we did in <u>Narayan I</u>.

28

refuse to enforce the agreement as a whole.[10]  See Gandee v. LDL Freedom Enters., Inc., 293 P.3d 1197, 1999-1200 (Wash. 2013) ("Severance is the usual remedy for substantively unconscionable terms, but where such terms 'pervade' an arbitration agreement, we 'refuse to sever those provisions and declare the entire agreement void.'" (quoting Adler v. Fred Lind Manor, 103 P.3d 773, 788 (Wash. 2004))); Cordova v. World Fin. Corp., 208 P.3d 901, 911 (N.M. 2009) ("[W]e must strike down the arbitration clause in its entirety to avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms for resolving disputes between the parties.").

Here, unconscionability so pervades the arbitration clause that it is unenforceable.  As a starting point, the

---

[10]  The Restatement (Second) of Contracts § 208 (Am. Law Inst. 1981) offers similar guidance on unconscionable contracts:

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

Likewise, but in the commercial context, HRS 490:2-302(1) (2008) provides, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . ."  See also Unif. Commercial Code § 2-302 cmt. 2 1A U.L.A. 156 (2012) ("[T]he court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement . . ." (emphasis added)).

arbitration clause is part of an adhesion contract whose terms were unilaterally determined by the stronger contracting party, and are ambiguous when read together with the other controlling documents. On a substantive level, the arbitration clause places a limitation on damages that would enable the Defendants to curtail liability for even the most outrageous and intentionally harmful conduct. The clause also hinders the Homeowners' ability to pursue their claims through extreme discovery and confidentiality limitations. As written, the arbitration clause goes beyond designating a forum for dispute resolution by depriving the Homeowners of a meaningful ability to assert rights that they might legitimately hold. Because unconscionability so pervades the arbitration clause, it is unenforceable.

### 4. Unconscionability in Other Jurisdictions

Other state jurisdictions have also invalidated arbitration clauses on general contract unconscionability grounds. For instance, in Brewer v. Missouri Title Loans, 364 S.W.3d 486 (Mo. 2012), the Supreme Court of Missouri, on remand from the Supreme Court of the United States, affirmed that the arbitration agreement at issue was unconscionable. Brewer borrowed $2,215 from the title company, which charged an annual percentage rate on the loan of 300 percent. Id. at 487. The agreement between the parties provided that Brewer must resolve

30

any claim against the title company through arbitration, but that the title company could enforce its right to repossess the collateral through the courts. Id. Additionally, no customer of the title company had ever successfully renegotiated the terms of the contract. Id.

When Brewer filed a class action petition against the title company alleging violations of state statutes, the title company filed a motion to compel arbitration and argued that the arbitration agreement included a class arbitration waiver. Id. at 488. The trial court found the class arbitration waiver unconscionable and unenforceable and, on appeal, the Supreme Court of Missouri agreed, holding that the class arbitration waiver was unconscionable and striking the arbitration agreement in its entirety. Id.

The Supreme Court granted the title company's petition, and vacated and remanded Brewer to the Supreme Court of Missouri for further consideration in light of Concepcion. Id.

On remand, instead of focusing on the enforceability of the class arbitration waiver, the Missouri court looked to "whether the arbitration agreement as a whole is unconscionable." Id. at 492. The Missouri court explained that "[t]he purpose of the unconscionability doctrine is to guard against one-sided contracts, oppression and unfair surprise" and that

31

"unconscionability is linked inextricably with the process of contract formation because it is at formation that a party is required to agree to the objectively unreasonable terms." Id. at 492-93.

The Missouri court then applied the doctrine to the facts of the case:

> The evidence in this case supports a determination that the agreement's arbitration clause is unconscionable. There was evidence that the entire agreement--including the arbitration clause--was non-negotiable and was difficult for the average consumer to understand and that the title company was in a superior bargaining position. Brewer could not negotiate the terms of the agreement, including the terms of the arbitration clause. Indeed, the evidence further demonstrated that no consumer ever successfully had renegotiated the terms of the title company's arbitration contract.

Id. at 493. The court also noted that the terms of the agreement were "extremely one-sided," and that the terms made it unlikely that a consumer like Brewer "could retain counsel to pursue individual claims." Id. at 493-94. The Missouri court determined that this "disparity in bargaining power," coupled with the "disparity between Brewer's remedial options and the title company's remedial options," was "strong evidence that the agreement [was] unconscionable." Id. at 495. As such, the Missouri court held that the entire arbitration clause within the agreement was unconscionable and unenforceable. Id. at 496. The title company subsequently appealed this decision to the Supreme Court, which declined review of the case the second time. See

32

Mo. Title Loans, Inc. v. Brewer, 133 S. Ct. 191 (2012).

Similarly, in Brown v. Genesis Healthcare Corp., 729 S.E.2d 217 (W. Va. 2012), the Supreme Court of Appeals of West Virginia, on remand from the Supreme Court of the United States, also considered if its earlier ruling invalidating the arbitration clause could be upheld under the doctrine of unconscionability. In Brown, three lawsuits arose from a nursing home's attempt to compel plaintiffs to participate in arbitration pursuant to a clause in the nursing home admission contract. Id. at 222. In two of the three cases, the West Virginia court ruled that the arbitration clauses were unconscionable. Id. Additionally, the court determined that the FAA could not be applied to personal injury or wrongful death actions. Id.

On certiorari, the Supreme Court reversed the West Virginia opinion on the grounds that the FAA requires courts to enforce arbitration agreements, with no exception for personal injury or wrongful death claims. Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 532-33 (2012). The Supreme Court noted that, on remand, the West Virginia court must determine whether the arbitration clauses were unenforceable under "state common law principles that are not specific to arbitration and pre-empted by the FAA." Id. at 534.

On remand, the West Virginia court determined that the

Supreme Court's decision did not alter their ultimate decision regarding unconscionability because the "doctrine of unconscionability that we explicated in Brown I is a general, state, common-law, contract-law principle that is not specific to arbitration, and does not implicate the FAA." Brown, 729 S.E.2d at 223. Ultimately, the West Virginia court determined that further development of the factual record regarding unconscionability was proper, and reversed the circuit court's prior orders and remanded for further proceedings on that issue. Id. at 229-30.

Thus, on remand from the Supreme Court, both Missouri and West Virginia determined that the unconscionability doctrine, as rooted in state, common-law contract principles, was a proper method for invalidating arbitration agreements. Likewise, we hold that, under the specific facts of this case, the arbitration clause was unconscionable pursuant to well-established Hawaiʻi contract law.

## IV. CONCLUSION

For the foregoing reasons, we affirm our earlier decision in Narayan v. Ritz-Carlton Development Co., 135 Hawaiʻi 327, 350 P.3d 995 (2015), on the grounds that the arbitration clause is unconscionable under common law contract principles. As such, the ICA's October 28, 2013 judgment on appeal is vacated

34

and the circuit court's August 28, 2012 order denying the Defendants' motion to compel arbitration is affirmed.  This case is remanded to the circuit court for further proceedings consistent with this opinion.

Terence J. O'Toole,
Judith Ann Pavey, and
Andrew J. Lautenbach
for petitioners

Bert T. Kobayashi, Jr.,
Lex R. Smith, Joseph A.
Stewart, Maria Y. Wang, and
Aaron R. Mun for respondents
The Ritz-Carlton Development
Company, Inc., The Ritz-
Carlton Management Company,
LLC, John Albert and Edgar
Gum and respondents Marriott
International, Inc., The
Ritz-Carlton Hotel Company,
LLC, Marriott Two Flags, LP,
Marriott Ownership Resorts,
Inc., MH Kapalua Venture,
LLC, and Marriott Vacations
Worldwide Corporation

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna



/s/ Richard W. Pollack

/s/ Karen T. Nakasone